IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| L.R., a minor, by next friends ) | |
| J.R. and K.R., ) | |
|  ) | |
|  Plaintiff, ) | |
|  ) | |
| v. ) | Case No. |
|  ) | |
| WILLIAMSON COUNTY BOARD ) | JURY DEMAND (12) |
| OF EDUCATION, ) | |
|  ) | |
|  Defendant. ) | |

## VERIFIED COMPLAINT

Plaintiff, L.R., a minor, by and through her next friends J.R. and K.R. (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby files this Verified Complaint against Defendant, WILLIAMSON COUNTY BOARD OF EDUCATION (hereinafter "Defendant"), and for her causes of action states and shows unto the Court as follows:

### I. PARTIES

1. Plaintiff resides with her mother and father, J.R. and K.R., in Williamson County, Tennessee. Plaintiff is a current tenth-grade student at Ravenwood High School (hereinafter "Ravenwood"), a school within the Williamson County school district.

2. Defendant Williamson County Board of Education is the legal entity charged with administering public education to students in Williamson County, Tennessee. Upon information and belief, Defendant can be served with process at 1320 West Main Street, Franklin, Tennessee 37064. Defendant receives state and federal funding and is therefore subject to Title IX of the Education Amendments Act of 1972, codified at 20 U.S.C. § 1681.

## II. JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as Title IX of the Education Amendments Act of 1972 is a law of the United States.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b), as the events or omissions giving rise to the claim contained herein occurred in the Middle District of Tennessee, and Defendant, a governmental entity, is deemed to reside in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(c).

## III. STATEMENT OF FACTS

5. Plaintiff began to foster a love for wrestling at a young age when her father, a lifelong wrestler, encouraged her to participate in the sport that has historically been dominated by men.

6. Plaintiff made her competitive debut in 2020 when she was in sixth grade. From the moment she took the mat, it was evident that Plaintiff possessed not only raw talent, but that she also had the passion, discipline, work ethic, and mental fortitude that was required to succeed in the sport.

7. Because wrestling is a historically male-dominated sport, the middle school where Plaintiff competed did not have an all-girls wrestling team. As a result, Plaintiff was a member of the co-ed team, meaning that she competed against both males and females in her weight class. Plaintiff's raw talent and devotion to success allowed her to compete successfully against almost all the male athletes in her weight class, earning her a spot on the Tennessee National Wrestling Team for both seventh and eighth grades. In eighth grade, Plaintiff

placed first in the state in her weight class, thus putting her squarely within the category of an elite wrestler.

8. Very few high schools in Middle Tennessee have an all-female wrestling team, and even less boast a genuinely reputable program. Consequently, elite female wrestlers generally do not compete in high school unless they are members of a private wrestling club or are able to attend a high school that has a female team.

9. Wanting to continue wrestling competitively, and in hopes of eventually earning a college scholarship for wrestling, Plaintiff applied for the open enrollment lottery system to attend Ravenwood to participate on their all-female team.

10. Shortly after enrolling at Ravenwood, however, it became apparent that the girls' wrestling team was an afterthought to the boys' wrestling team. While the boys' wrestling team had a head coach that was specifically hired by the school to ensure the success of the all-male wrestling team, the girls' team did not. The boys' wrestling coach merely acted as the head coach for the girls' team by default for the 2024-2025 athletic season and was not committed to the success of the girls' team. The only "official" coach for the girls' team was a female Ravenwood employee who joined the program midway through the season and assisted with administrative duties and watched the girls compete. She did not provide any genuine instruction or "coaching."

11. To fill the gap that was left in the absence of a devoted and qualified head coach, Plaintiff's father and another team parent stepped in as volunteer coaches for the girls' team. Plaintiff's father ran practices, coached, and "cornered" every match, while the other team parent handled the majority of the communication duties.

12. The boys' coach was able to act as the girls' coach in part because the two (2) teams share a practice space. On a typical day, the boys' team can be found practicing under the instruction of the head coach while utilizing the appropriate space on the wrestling mat. Meanwhile, the girls' team can be found relegated to a small corner of the shared area, forced to practice on their own with the assistance of parent volunteers and minimal feedback from their "coach." Upon information and belief, the girls' wrestling team is the only girls' sports team at Ravenwood that does not have its own independent practice space.

13. On one (1) occasion, the girls' team was even prohibited by a boys' team volunteer coach from watching him demonstrate technical drills without being given any further explanation. The rules of the sport and techniques utilized are the same for both male and female wrestling, thus meaning that there is no reason that the coach would not have been able to demonstrate the technical drills for the boys' and girls' teams simultaneously.

14. Similarly, Plaintiff and another member of the girls' wrestling team were informed that they were not welcome to practice with the boys' Varsity wrestling team because the girls were not Varsity athletes. Both Plaintiff and the other student were members of the Varsity girls' wrestling team and were therefore Varsity athletes. As such, it is evident that the true reason for prohibiting the girls from participating in the boys' practices was because of apathy and discrimination, and not because of the proffered reason.

15. Notably, when viewing the Varsity roster, Plaintiff's name is so erroneously spelled that it is clear the mistake is not merely a typographical error, but rather that Plaintiff is listed under the wrong name. Such an error indicates a lack of attention and detail paid to the girls' wrestling team.

16. Despite the apathy that was exhibited toward the Ravenwood girls' wrestling team, the girls' team was still able to have a successful season, with Plaintiff and another team member placing fourth in the state tournament. A large part of the girls' team's success was attributable to parent volunteers that selflessly stepped in to coach the team when the head coach did not. Said volunteer parents were positioned at the corners of the mat to provide support during every meet, while the "coach" assigned by Ravenwood was nowhere to be found.

17. In anticipation of the 2025-2026 athletic season, Ravenwood hired a full-time wrestling coach for the girls' wrestling team. Simultaneously, however, the school decided that it would no longer be allowing volunteer coaches for the girls' wrestling team. A true and redacted copy of the email sent by the boys' wrestling coach is attached hereto as **Exhibit A.**

18. Upon information and belief, the new policy prohibiting volunteer wrestling coaches only applies to the girls' wrestling team. The boys' wrestling team will still have volunteer coaches for the 2025-2026 season.

19. Additionally, the boys' wrestling team has already started pre-season training and weight training for the 2025-2026 athletic season. When Plaintiff and her family inquired as to the plan for the girls' team's pre-season training, they were informed that the girls' wrestling team would not be allowed to participate in pre-season training and would only be able to begin practicing at the start of the season.

20. Pre-season training is incredibly important for elite wrestling, as it allows the athletes to ensure that they are prepared both mentally and physically for the start of the season. Prohibiting Plaintiff and the other female wrestlers from participating in pre-season

training means that the girls will have to play catch-up with athletes from other schools and will potentially have a negative impact on their performance.

21. The apathy toward girls' wrestling is not only apparent in the superior opportunities afforded to the boys' wrestling team, but it is also evident in the assignment and compensation of coaches for the respective teams.

22. During the 2024-2025 wrestling season, the girls' wrestling team did not have an official coach and, as previously stated, the boys' coach acted as the default coach for the girls' team. Meanwhile, Ravenwood's website reveals that, for the 2024-2025 season, the boys' wrestling team was assigned ten (10) coaches, with one (1) head coach and nine (9) assistant coaches. A true and exact copy of the list of coaches for the boys' wrestling team for the 2024-2025 season is attached hereto as **Exhibit B**.

23. Ravenwood hired an official head coach for the girls' wrestling team for the 2025-2026 athletic season, however, the new coach hired for the girls' team already exhibits the same apathy that was previously exhibited by the boys' coach.

24. By way of example, the girls' wrestling coach did not file the paperwork for the girls' wrestling team to have a float in the school-wide homecoming parade on September 25, 2025, nor did she submit any paperwork for the team to ride on a different float. As a result, the girls' wrestling team was not represented at the parade in any capacity.

25. Plaintiff has suffered damages as a result of Ravenwood's unequal treatment of the boys' and girls' wrestling teams, thus resulting in a violation of Title IX.

## IV. CAUSES OF ACTION

### COUNT I – VIOLATION OF TITLE IX

### For Unequal Treatment Based on Assignment of Coaches (2024-2025)

26. Plaintiff incorporates each of the preceding paragraphs (1-25) as if each is fully set forth herein.

27. Title IX of the Education Amendments Act of 1972, codified at 20 U.S.C. § 1681, states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).

28. To establish a claim under Title IX, the Sixth Circuit requires a plaintiff to establish that (1) they were excluded from participation in an education program because of their sex; (2) the educational institute received federal financial assistance at the time of the exclusion; and (3) that the discrimination was harmful. D.H. v. Williamson Cnty. Bd. of Educ., 638 F. Supp. 3d 821, 834-35 (M.D. Tenn. 2022). In the context of secondary school athletics, Title IX requires that schools provide "gender-blind equality of athletic opportunity to . . . students." Clemons v. Shelby Cty. Bd. of Educ., 818 Fed. App'x. 453, 461 (6th Cir. 2020) (quoting Horner v. Ky. High Sch. Athletic Ass'n, 43 F.3d 265, 273 (6th Cir. 1994)).

29. Although schools must provide "gender-blind equality of athletic opportunity," they are not required to provide "perfect parity" between male and female sports programs. Clemons, 818 Fed. App'x at 461. Rather, whether a school is providing equal athletic

opportunities to male and female athletes is a determination made by balancing the factors enumerated in 34 C.F.R. 106.41. Id. The factors are as follows:

   a. Whether the selection of sports and levels of competition effectively accommodate the interest and abilities of members of both sexes;
   b. The provision of equipment and supplies;
   c. Scheduling of games and practice time;
   d. Travel and per diem allowance;
   e. Opportunity to receive coaching and academic tutoring;
   f. Assignment and compensation of coaches and tutors;
   g. Provision of locker rooms; practice and competitive facilities;
   h. Provision of medical and training facilities and services;
   i. Provision of housing and dining facilities and services;
   j. Publicity.

24 C.F.R. 106.41.

30. The claims are assessed in three (3) separate categories, "'(1) compliance in financial assistance (scholarships) based on athletic ability; (2) equivalence in other athletic benefits and opportunities (equal treatment claims); and (3) effective accommodation of student interest and abilities (accommodation claims).'" Clemons, 818 Fed. App'x at 461 (quoting Parker v. Franklin Cty. Cmty. Sch. Corp., 667 F.3d 910, 918 (7th Cir. 2012) (citing 44 Fed. Reg. at 71,414)).

31. Plaintiff falls within the second category of "unequal treatment claims" based on the disparate treatment between the Ravenwood girls' and boys' wrestling teams. Accordingly, the core inquiry is "'[w]hether disparities in benefits, treatment, services or opportunities in individual segments of the program are substantial enough in and of themselves to deny equality of athletic opportunity.'" Clemons, 818 Fed. App'x at 461 (quoting 44 Fed. Reg. at 71,417).

Page **8** of **14**

Case 3:25-cv-01169    Document 1    Filed 10/09/25    Page 8 of 14 PageID #: 8

32. Ravenwood is a public educational institution that is part of the Williamson County school district, an entity that receives federal funding and is therefore subject to Title IX of the Education Amendments Act of 1972.

33. Plaintiff was excluded from participation in an education program during the 2024-2025 wrestling season based on unequal treatment because Ravenwood assigned significantly more coaches to the boys' wrestling team and did not assign any qualified coaches to the girls' wrestling team. The unequal treatment between the girls' and boys' wrestling teams resulted in unequal athletic opportunities for the girls' wrestling team because they did not receive the same training and assistance that was provided to the boys' team.

34. The unequal treatment that resulted in unequal athletic opportunities was harmful to Plaintiff because she did not receive adequate training for the 2024-2025 wrestling season, thus affecting her ability to compete at her peak performance level.

## COUNT II – VIOLATION OF TITLE IX

### For Unequal Treatment Based on Practice Space (2024-2025)

35. Plaintiff incorporates each of the preceding paragraphs (1-25) as if each is fully set forth herein.

36. Plaintiff was excluded from participation in an education program during the 2024-2025 season based on unequal treatment because of the lack of individual practice space available to the girls' wrestling team. The unequal treatment resulted in unequal athletic opportunities because the boys' wrestling team had adequate space for practice and to perform training drills, while the girls' team was relegated to a small corner of the wrestling mat.

37. The unequal treatment that resulted in unequal athletic opportunities was harmful to Plaintiff because she was not able to practice at the same level as the boys' wrestling team due to lack of allotted space.

## COUNT III – VIOLATION OF TITLE IX

### For Unequal Opportunity to Receive Coaching (2025-2026)

38. Plaintiff incorporates each of the preceding paragraphs (1-25) as if each is fully set forth herein.

39. Plaintiff is being excluded from participation in an education program for the 2025-2026 wrestling season based on unequal treatment because Ravenwood will no longer allow volunteer coaches to assist the girls' wrestling team, while still allowing volunteer coaches to assist the boys' wrestling team. The unequal treatment between the girls' and boys' wrestling teams is causing unequal athletic opportunities for the girls' wrestling team because they are not able to receive the beneficial training and assistance that the volunteer coaches provide.

40. The unequal treatment resulting in unequal athletic opportunity is harmful to Plaintiff because she is not receiving the benefit and value that the volunteer coaches add to the success of the wrestling program.

## COUNT IV – VIOLATION OF TITLE IX

### For Unequal Opportunity Based on Practice Time (2025-2026)

41. Plaintiff incorporates each of the preceding paragraphs (1-25) as if each is fully set forth herein.

42. Plaintiff is being excluded from participation in an education program for the 2025-2026 wrestling season based on unequal treatment because the girls' team is not allowed to

Page **10** of **14**

Case 3:25-cv-01169     Document 1     Filed 10/09/25     Page 10 of 14 PageID #: 10

participate in pre-season training. The unequal treatment between the boys' and girls' wrestling teams is causing unequal athletic opportunities for the girls' team because they are not receiving the same practice time as the boys' team.

43. The unequal treatment resulting in unequal athletic opportunity is harmful to Plaintiff because she is not receiving the benefit and value of pre-season training that the members of the boys' team are receiving.

## APPLICATION FOR PERMANENT INJUNCTION

44. Plaintiff incorporates each of the preceding paragraphs (1-25) as if each is fully set forth herein.

45. Plaintiff holds reasonable belief that Ravenwood will continue to violate Title IX by providing unequal athletic opportunities to the girls' wrestling team during the 2025-2026 athletic season.

46. Pursuant to Federal Rule of Civil Procedure 65, Plaintiff seeks a permanent injunction stating the following:

    a. Requiring Ravenwood, a member school of Defendant, to allow the girls' wrestling team to immediately participate in pre-season training;

    b. Requiring Ravenwood, a member school of Defendant, to immediately allow volunteer coaches to assist the girls' wrestling team;

    c. Requiring Ravenwood, a member school of Defendant, to immediately provide independent practice space for the girls' wrestling team.

**PURSUANT TO RULE 38(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE, PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF TWELVE (12) ON ALL ISSUES SO TRIABLE.**

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the following relief:

1. That proper process issue and be served on Defendant, and that Defendant be required to answer this Verified Complaint within the time required by law;

2. That Plaintiff be allowed to amend this Verified Complaint as justice requires and as this lawsuit progresses and more evidence is procured from the discovery process;

3. That Plaintiff be awarded injunctive relief as requested above, and that this Court hold an evidentiary hearing regarding the requested injunctive relief at the final hearing in this cause;

4. That Plaintiff be awarded judgment in her favor on all counts in this Verified Complaint in such sums that shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental, economic, non-economic, and consequential damages incurred, or to be incurred, by Plaintiff in an amount not to exceed $300,000;

5. That Plaintiff be awarded a trial by a jury of twelve (12) on all issues so triable;

6. That Plaintiff be awarded her reasonable attorney's fees and expert fees incurred in this action pursuant to 42 U.S.C. § 1988;

7. That all costs, including court costs, be assessed against Defendants; and

8. That Plaintiff be awarded any further or general relief deemed appropriate by this Court or to which Plaintiff may be entitled.

[SIGNATURE BLOCK TO FOLLOW]

Respectfully submitted,

/s/ Andrew P. Goldstein
**Andrew P. Goldstein, Esq., BPR # 037042**
**Madeleine O. Lamb, Esq., BPR # 042324**
COLE LAW GROUP, P.C.
1648 Westgate Circle, Suite 301
Brentwood, TN 37027
Tel: (615) 326-9059
Fax: (615) 942-9514
agoldstein@colelawgrouppc.com
mlamb@colelawgrouppc.com
*Attorneys for Plaintiff*

[VERIFICATON TO FOLLOW]

## VERIFICATION

STATE OF TENNESSEE        )
COUNTY OF WILLIAMSON      )

I, L.R., being first and duly sworn, make oath that I have read the foregoing, know the contents thereof, and that the same is true and correct to the best of my knowledge, information, and belief.

L.R.
_____
L.R.

SWORN TO AND SUBSCRIBED before me this 8 day of October, 2025.

_____
NOTARY PUBLIC

My commission expires: 02/19/2029

